# EXHIBIT C

# iLoveKickboxing.com

## MULTI-OUTLET AGREEMENT

**For:** _Chichi Wacha_ Corp
Andrew Moorcroft, President

# TABLE OF CONTENTS

I. GRANT OF RIGHTS TO OPEN ADDITIONAL OUTLETS ................................................................. 1
    1.1 Additional Outlets ................................................................................................................... 1
    1.2 Franchise Agreements ........................................................................................................... 1
    1.3 Term ....................................................................................................................................... 1
    1.4 Effect of Expiration ................................................................................................................ 1
    1.5 No Subfranchising Rights ...................................................................................................... 2
II. DEVELOPMENT OBLIGATIONS ............................................................................................... 2
    2.1 Development Obligations ....................................................................................................... 2
    2.2 Timing of Execution of Leases and Franchise Agreements ................................................... 2
    2.3 Force Majeure ........................................................................................................................ 2
    2.4 Termination of Agreement and Limited Additional Development Rights .................................. 3
III. DEVELOPMENT FEE ............................................................................................................... 3
    3.1 Development Fee .................................................................................................................... 3
    3.2 Franchise Agreements for Additional Outlets ......................................................................... 3
IV. TRANSFER OR ASSIGNMENT ................................................................................................ 3
    4.1 Assignability .......................................................................................................................... 3
    4.2 Transfer by You to an Affiliated Entity .................................................................................... 4
V. NON-COMPETITION ................................................................................................................. 4
    5.1 Restriction on Competitive Activities ...................................................................................... 4
    5.2 Website and Unauthorized Advertising ................................................................................... 4
VI. DEFAULT AND TERMINATION ................................................................................................ 4
    6.1 General .................................................................................................................................. 4
    6.2 Operation of Opened Outlets after Termination or Expiration ................................................. 4
VII. DISPUTE RESOLUTION ......................................................................................................... 4
    7.1 Dispute Resolution ................................................................................................................ 4
VIII. NOTICES ............................................................................................................................... 5
    8.1 Notices .................................................................................................................................. 5
IX. GENERAL TERMS AND PROVISIONS .................................................................................... 5
    9.1 Governing Law ...................................................................................................................... 5
    9.2 Modification ........................................................................................................................... 5
    9.3 Waiver and Delay .................................................................................................................. 5
    9.4 Severability; Partial Invalidity ................................................................................................. 5
    9.5 Titles for Convenience Only ................................................................................................... 6
    9.6 No Third Party Beneficiaries .................................................................................................. 6
    9.7 Survival of Covenants ........................................................................................................... 6
    9.8 Successors and Assigns ........................................................................................................ 6
    9.9 Counterparts ......................................................................................................................... 6
    9.10 Entire Agreement ................................................................................................................. 6
EXHIBIT 1 - DEVELOPMENT SCHEDULE .................................................................................... 7

# MULTI-OUTLET AGREEMENT

This Multi-Outlet Agreement ("Agreement") is made on *January 7th*, 20*16* (the "Effective Date") by and between ___*Chichi Wacha Corporation*___ ("You") and ILKB LLC, a New York limited liability company ("we" or "ILKB").

ILKB is the franchisor of the iLoveKickboxing.com franchise system. You or an affiliated company of yours is concurrently entering into a Franchise Agreement with ILKB, under the terms of which you are being granted a right to open and operate a retail kickboxing center that ILKB has consented to ("Outlet"), providing "iLoveKickboxing.com Services and Products" (as defined in the Franchise Agreement), under the iLoveKickboxing.com trademarks and in accordance with the iLoveKickboxing.com business format.

In consideration of the mutual promises, covenants, agreements and conditions contained in this Agreement, and other good and valuable consideration, you and ILKB hereby agree as follows.

## I. GRANT OF RIGHTS TO OPEN ADDITIONAL OUTLETS

### 1.1 Additional Outlets.

(a) Subject to the terms and conditions contained herein, ILKB hereby grants to you the right and you hereby agree to establish and operate a number of additional Outlets in accordance with the schedule of openings attached hereto as Exhibit 1 (the "Development Schedule").

(b) So long as your obligations under the Development Schedule are being met on a timely basis and until this Agreement terminates, we will not ourselves nor allow any other iLoveKickboxing.com licensee or franchisee to operate an Outlet within the geographical area indicated in the Development Schedule.

(c) Your rights to open and operate Outlets do not extend to a "Non-Traditional Venue" (defined as a facility operated under the "iLoveKickboxing.com" marks that is located within another primary business or in conjunction with other businesses or at institutional settings, including toll roads, hotels and motels, casinos, stadiums, airports, colleges and universities, schools, hospitals, military and other governmental facilities, office facilities, and any site for which the lessor, owner or operator thereof has indicated its intent to prefer or limit the operation of its facilities to a master concessionaire or contract service provider).

(d) If ILKB becomes insolvent or declares bankruptcy or is no longer authorized to offer and sell franchises in your state because of a lapse of applicable franchise registration or other reason, you will continue to have the right to operate under this Agreement until and unless a court orders otherwise.

### 1.2 Franchise Agreements.

(a) When you open an additional Outlet under the Development Schedule, you must enter into our then current form of Franchise Agreement for that additional Outlet (provided that the economic terms, specifically royalty and advertising fees, of such Franchise Agreements for the additional Outlet will not change from the economic terms of this Agreement). So long as you are in good standing under this Agreement, you will continue to have the right to open and operate Outlets in the Development Area in accordance with the Development Schedule.

(b) Each Franchise Agreement executed pursuant hereto will provide that ILKB and our affiliates may not open or operate, or franchise or license the operation of, any Outlet within the protected territory surrounding the Outlet opened by you pursuant to such Franchise Agreement.

### 1.3 Term.

The term of this Agreement commences on the Effective Date and, unless sooner terminated by your material breach hereof, will continue until you have opened all Outlets to be developed in accordance with the Development Schedule, at which time this Agreement will terminate. There will be no extensions or renewal periods relating to the Development Schedule unless done so in writing. Notwithstanding the above, you may terminate this Agreement upon 30 days written notice to ILKB. Upon termination of this Agreement, you will no longer have the right to open future Outlets under the Development Schedule.

### 1.4 Effect of Expiration.

Unless an additional development right has been agreed to pursuant to section 2.4 hereof and a restated or revised Development Schedule has been initialed by ILKB and you, upon the expiration or termination of this Agreement, (i) you will have no further right to construct, equip, own, open or operate additional Outlets that are not, at the time of such termination or expiration, the subject of a then existing Franchise Agreement between ILKB and you (or a company affiliated with you), and (ii) ILKB or our affiliates may thereafter themselves construct, equip, open, own or operate, and license others to (or grant development rights to) construct, equip, open, own or operate Outlets anywhere, subject only to the territorial rights granted under an applicable Franchise Agreement for an Outlet.

### 1.5 No Subfranchising Rights.

You do not have the right under this Agreement to enter into subfranchise or sublicense agreements with anyone.

## II. DEVELOPMENT OBLIGATIONS

### 2.1 Development Obligations.

(a) You must construct, equip and open each additional Outlet not later than the date specified in Exhibit 1 applicable to the Outlet, and thereafter continue to operate the Outlet or assign it with our consent to another iLoveKickboxing.com franchisee.

(b) Any Outlet developed hereunder that is open and operating and which has been assigned to an affiliate of yours or to another iLoveKickboxing.com franchisee or to a third party with our consent will continue to be considered as partial satisfaction of your obligations under the Development Schedule for so long as the assignee remains in good standing under the Franchise Agreement relating to that Outlet.

### 2.2 Timing of Execution of Leases and Franchise Agreements.

(a) Notwithstanding anything to the contrary contained herein, on or before the date that is 90 days before the date an Outlet is required to be opened, you must have executed a lease and Franchise Agreement, and paid the balance of the required Initial Franchise Fee, for that Outlet.

(b) With respect to the location, equipping, opening and operation of an additional Outlet you are opening under the Development Schedule, you must comply with the Franchise Agreement that is applicable to that Outlet.

### 2.3 Force Majeure.

(a) The term "*Force Majeure*" means natural disasters (such as tornadoes, earthquakes, hurricanes, floods, fires or other natural catastrophes); strikes, lockouts or other industrial disturbances; war, terrorist acts, riot, or other civil disturbance; epidemics; or other similar forces which you could not by the exercise of reasonable diligence have avoided; provided however, that neither an act or failure to act by any federal, state, county, municipal and local governmental and quasi-governmental agency, commission or authority, nor the performance, non-performance or exercise of rights under any agreement with you by any lender, landlord, or other person will be a *Force Majeure*, except to the extent that such act, failure to act, performance, non-performance or exercise of rights results from an act that is otherwise a *Force Majeure*. For the avoidance of doubt, your financial inability to perform or your insolvency will not be a *Force Majeure* hereunder.

(b) Subject to your continuing compliance with section 2.3(c) below, should you be unable to meet your development obligation for a scheduled additional Outlet solely as the result of a *Force Majeure*, which results in your inability to construct or operate the Outlets pursuant to the terms of this Agreement, the date on which the scheduled additional Outlet is to be opened will be extended by an amount of time equal to the time period during which the *Force Majeure* exists.

(c) In the event of a *Force Majeure*, you must notify ILKB in writing within 10 business days following commencement of the alleged *Force Majeure* of the specific nature and extent of the *Force Majeure*, and how it has impacted your performance hereunder. You must continue to provide ILKB with updates and all information as may be requested by ILKB, including your progress and diligence in responding to and overcoming the *Force Majeure*.

(d) ILKB will not be liable to you for any consequential damages, including lost profits, interest expense, increased construction or occupancy costs, or other costs and expenses incurred by you unless it results from our gross negligence or intentional acts.

## 2.4 Termination of Agreement and Limited Additional Development Rights.

(a) Once you have opened all additional Outlet specified in the Development Schedule, this Agreement will automatically terminate. However all rights under Franchise Agreements you enter into respecting the additional Outlets remain in full force and effect. If you desire to engage in further development of additional Outlets in excess of the obligations committed to under the Development Schedule, you must at the earlier of (i) 180 days prior to the scheduled expiration of the term hereof or (ii) the date on which acceptance of the proposed site for the last Outlet required to meet the Development Schedule is issued, notify ILKB in writing of your desire to develop additional Outlets and present your plan for such development over a new term, setting forth the number of proposed Outlets and the deadlines for the development of each of them within such proposed term. ILKB has the sole discretion to determine whether such additional development is desirable, and if ILKB agrees to allow you to develop additional Outlets, it will be subject to the conditions set forth in section 2.4(b) below. Otherwise, the development rights granted under this Agreement may not be extended.

(b) Your rights to additional development described in this section 2.4 are subject to your fulfillment of the following conditions:

(i) You (and each of your affiliates that have developed or operate Outlets) must have fully performed all of your obligations under this Agreement and all other agreements between you and ILKB.

(ii) You must have demonstrated to ILKB your financial capacity to perform the additional development obligations set forth in any restated or revised Development Schedule. In determining if you are financially capable, ILKB will apply the same criteria to you that ILKB applies to prospective iLoveKickboxing.com multi-outlet developers at that time.

(iii) You and ILKB must agree to, and initial, a restated or revised Development Schedule.

## III. DEVELOPMENT FEE

## 3.1 Development Fee.

(a) When you sign this Agreement, you must pay us the following "Development Fee" (which satisfies in full the Initial Franchise Fee due under the Franchise Agreements for each Outlet) for our granting you the right to open multiple Outlets pursuant to the Development Schedule (check the box that is applicable):

[✓] $110,000 for three Outlets, or

[ ] $145,000 for five Outlets.

(b) If you do not successfully complete initial franchise training for the first iLoveKickboxing.com Franchise Agreement you enter into, ILKB will refund your Development Fee, less any expenses ILKB incurred relating to this Agreement. **Otherwise, the Development Fee is not refundable.**

## 3.2 Franchise Agreements for Additional Outlets.
Each additional Outlet to be opened pursuant hereto will require execution by you and us of a separate Franchise Agreement (using our then current form thereof) that additional Outlet.

## IV. TRANSFER OR ASSIGNMENT

## 4.1 Assignability.

(a) This Agreement has been entered into by ILKB in reliance upon and in consideration of the singular personal qualifications, trust and confidence reposed in you by ILKB. Accordingly, although you may assign individual Franchise Agreements, you may not assign this Agreement except as provided in Section 4.2 below.

(b) ILKB has the right to assign and transfer this Agreement, and all of our rights and privileges hereunder to any other person, firm or corporation ("Our Assignee"); provided that, in respect to any such transfer ("Assignment by Us") resulting in the subsequent performance by Our Assignee of the functions of franchisor hereunder: (i) at the time of Assignment by Us, Our Assignee must be financially responsible and economically capable of performing the obligations of franchisor hereunder; and (ii) Our Assignee must expressly assume and agree to perform such obligations. If there is an Assignment by Us, we will be relieved of all obligations or liabilities after the effective date of the assignment.

## 4.2 Transfer by You to an Affiliated Entity.

You may at any time without our consent, but upon 30 days prior written notice to ILKB, assign and transfer this Agreement to a corporation, limited liability company or other business entity that is (i) organized for the purpose of operating as a developer of additional Outlets and (ii) entirely owned by you. Any assignment and transfer to an affiliated entity must be evidenced by a written instrument, in form reasonably satisfactory to ILKB, under the terms of which said business entity expressly assumes all of your obligations hereunder, whether accrued at the time of such assignment or arising thereafter, and agrees to be bound by all the terms and provisions of this Agreement to the same extent and in the same manner as you are. A copy of said instrument, executed by both you and said business entity must be delivered to ILKB before the effective date of the transfer.

## V. NON-COMPETITION

### 5.1 Restriction on Competitive Activities.

During the term of this Agreement and for one year after it is terminated or expires, you and each of your principal equity owners must comply with the non-competition covenants contained in the last effective Franchise Agreement entered into by you and ILKB.

### 5.2 Website and Unauthorized Advertising.

During the term of this Agreement, neither you nor any of your principal equity owners may establish a website or register an Internet domain name using, or otherwise advertise on the Internet or anywhere else, the trademark "iLoveKickboxing.com", or marks similar to "iLoveKickboxing.com", or any combination or derivations thereof, or any other ILKB trademark, except as specifically authorized by ILKB in writing.

## VI. DEFAULT AND TERMINATION

### 6.1 General.

This Agreement may be terminated by ILKB if you (i) fail to substantially comply with any obligation, duty or promise under this Agreement, including failure to open an Outlet within the time specified in the Development Schedule, after being given a notice of default and reasonable opportunity to cure the default (no more than 30 days), or (ii) are in material breach of any Franchise Agreement that you (or your affiliated entity) entered into with ILKB.

### 6.2 Operation of Opened Outlets after Termination or Expiration.

If ILKB terminates this Agreement for the reasons described in section 6.1 above, you will be able to maintain ownership and operation of the Outlets that you have developed so long as you are not in material breach of the applicable Franchise Agreements; however, you will forfeit any rights under the Development Schedule and this Agreement, and you will forfeit the balance of the Development Fee to be applied as credits against the Initial Franchise Fee for Outlets that were not developed.

## VII. DISPUTE RESOLUTION

### 7.1 Dispute Resolution.

Any dispute between ILKB or any of our related entities, and you or any of your equity owners or related entities, arising out of or relating to this Agreement or its breach, including without limitation, any claim that this Agreement or any of its parts, or its formation, is invalid, illegal or otherwise voidable or void, or induced by fraud, and the right of a party to recover legal fees and expenses, will be resolved in accordance with the dispute resolution procedures set forth in the last effective Franchise Agreement entered into by you and ILKB.

[Our Initials: _____   Your Initials: _____

## VIII. NOTICES

**8.1 Notices.**

(a) All notices that the parties hereto are required or may desire to give under or in connection with this Agreement will be in writing and (unless personally delivered by an agent of the sending party) must be sent by reliable overnight courier, for delivery on the next business day and addressed as follows:

(i) If to ILKB, to:

ILKB LLC
1844 LANSDOWNE AVE
MERRICK NY 11566-3821
Phone: (516) 543-0041

(ii) If to you, to:

Andrew Moorcroft
5607 Edgevale St
TIMNATH, CO 80547
Phone:

(b) The addresses herein given for notices may be changed at any time by either party by written notice given to the other party as herein provided.

(c) Any notice between you and us will be deemed given the earlier of (i) the next business day after deposit with a reliable overnight courier, properly addressed and marked for delivery on the next business day, or (ii) when actually delivered in person by the sending party or his, her or its agent.

## IX. GENERAL TERMS AND PROVISIONS

**9.1 Governing Law.**
The Federal Arbitration Act (9 U.S.C. §1 *et seq.*) governs the arbitration of disputes under this Agreement. Otherwise, the laws of New York govern this Agreement, without regard to conflicts of laws. If any provision of this Agreement is impermissible under a governing law, the provision will be deemed amended to conform to that law while maintaining to the maximum extent possible the original intent of the provision, or if the provision as amended cannot substantially maintain the original intent, then the provision will be deemed deleted.

**9.2 Modification.**
This Agreement cannot be modified or changed except by a written instrument signed by all of the parties hereto.

**9.3 Waiver and Delay.**
No waiver by ILKB of any breach or series of breaches or defaults in performance by you and no failure, refusal or neglect by ILKB either to exercise any right of ILKB hereunder or to insist upon strict compliance with or performance of your obligations under this Agreement, will constitute a waiver of the provisions of this Agreement with respect to any subsequent breach thereof or a waiver by ILKB of its right at any time thereafter to require exact and strict compliance with the provisions thereof.

**9.4 Severability; Partial Invalidity.**
Nothing contained in this Agreement will be construed as requiring the commission of any act contrary to law. Whenever there is any conflict between any provisions of this Agreement and any present or future statute, law, ordinance, regulation or judicial decision, contrary to which the parties have no legal right under this Agreement, the latter will prevail, but in such event the provision of this Agreement thus affected will be curtailed and limited only to the extent necessary to bring it within the requirements of the law. If any part, article, section, sentence or clause of this Agreement is held to be indefinite, invalid or otherwise unenforceable, the indefinite, invalid or unenforceable provision will be deemed appropriately modified, and the remaining parts thereof will continue in full force and effect.

### 9.5 Titles for Convenience Only.
Section titles used in this Agreement are for convenience only and will not be deemed to affect the meaning or construction of any of the terms, provisions, covenants or conditions of this Agreement.

### 9.6 No Third Party Beneficiaries.
This Agreement is not intended to benefit any other person or entity except the named parties hereto and no other person or entity (other than financing sources to whom we have granted or consented to a collateral assignment of this Agreement) will be entitled to any rights hereunder by virtue of so-called "third party beneficiary rights" or otherwise.

### 9.7 Survival of Covenants.
The covenants contained in this Agreement that by their terms require performance by the parties after the expiration or termination of this Agreement will be enforceable notwithstanding said expiration or other termination of this Agreement for any reason whatsoever.

### 9.8 Successors and Assigns.
This Agreement is binding upon (i) ILKB and inures to the benefit of our successors and assigns and (ii) you and inures to the benefit of your successors and assigns, subject to the restrictions on any assignment by you contained herein.

### 9.9 Counterparts.
This Agreement may be executed in any number of copies, each of which will be deemed to be an original, and all of which together will be deemed to be one and the same instrument.

### 9.10 Entire Agreement.
This Agreement contains all of the terms and conditions agreed upon by you and ILKB with respect to the subject matter hereof, provided however, that nothing in this Agreement or in any related agreement is intended to disclaim the representations made in the iLoveKickboxing.com franchise disclosure document that was provided to you. No other agreements oral or otherwise will be deemed to exist or to bind any of the parties hereto and all prior agreements and understandings are superseded hereby. You acknowledge that you executed this Agreement without reliance upon any unauthorized representation or promise.

**IN WITNESS WHEREOF,** the parties executed this Agreement as of the Effective Date.

YOU:

*Chichi Wacha Corp*

By: _____

*Andrew Moovcroft, President*
[PRINTED NAME AND TITLE]

ILKB:

ILKB, LLC

By: _____

## EXHIBIT 1 - DEVELOPMENT SCHEDULE

The initial Outlet (or Outlet 1) is to be opened and operated under the concurrently signed Franchise Agreement within 365 days (12 months) after the Effective Date of this Agreement. The second and third (additional) Outlets must be opened within 24 months of the Effective Date of this Agreement, and if applicable the fourth and fifth Outlets must be opened within 36 months of the Effective Date of this Agreement. All Outlets may only be opened at sites that we have reviewed and consented to, all of which will be located in the "Development Area" described either [✓] in the map immediately following this Exhibit 1 or [ ] as follows:

*Territory #7   +   Territory #11   per attached map.*

You must open (and thereafter maintain) Outlets in accordance with either of the following schedules, as applicable:

If this Agreement is for three Outlets:

| NUMBER OF OUTLET | DATE BY WHICH ADDITIONAL OUTLET MUST BE OPENED |
|---|---|
| 2 | January 7th, 2018 |
| 3 | January 7th, 2019 |

If this Agreement is for five Outlets:

| NUMBER OF OUTLET | DATE BY WHICH ADDITIONAL OUTLET MUST BE OPENED |
|---|---|
| 2 | |
| 3 | |
| 4 | |
| 5 | |

about:blank

4019BA77–AF36–4C32–9CD7–3CAF725285CEScreenshot (806).png

1/7/16 4:52 PM

